ORDERED.

Dated: September 23, 2020

_____
Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Scott David Olson
and Jennifer Marie Olson,

    Debtors.
_____/

Case No. 8:20-bk-04890-MGW
Chapter 13

**ORDER AND MEMORANDUM OPINION**
**GRANTING MOTION TO INVOKE RULE 3002.1**

    The Debtors, who are current on their home mortgage, have proposed paying their mortgage servicer direct outside the plan. Under an administrative order this Court enters in all chapter 13 cases, the automatic stay is terminated when a debtor proposes to pay a secured creditor outside the plan. Because the stay has been terminated as to the Debtors' mortgage servicer, Rule 3002.1—which imposes certain notice requirements on a creditor who holds a security interest in a debtor's principal residence—no longer applies.

The Debtor has asked the Court to reinstate certain provisions in Rule 3002.1. But the Debtor's mortgage servicer objects, arguing that Rule 3002.1 was intended to apply only when a debtor is curing arrearages through a chapter 13 plan, which is not the case here.

Although Rule 3002.1 was initially adopted to help implement Bankruptcy Code § 1322(b)(5), which permits debtors to cure mortgage arrearages through the plan, the rule was later amended to delete any reference to § 1322(b)(5) because Rule 3002.1 is intended to apply even when, like here, there are no prepetition arrearages. And because the Debtors intend to continue making their mortgage payments, they have a need for the information required by Rule 3002.1. The Court will therefore reinstate sections (a), (c), (e), and (i) of Rule 3002.1.

## I. BACKGROUND

On June 25, 2020, the Debtors filed for chapter 13 bankruptcy.[1] At the time the Debtors filed for bankruptcy, their home was encumbered by a mortgage in favor of Shellpoint Mortgage Servicing.[2] The Debtors were current on their mortgage as of the petition date.[3]

---

[1] Doc. No. 1.

[2] Doc. No. 14, ¶ 3.

[3] Claim No. 10-1.

In their chapter 13 plan, the Debtors have indicated their intent to pay Shellpoint directly outside the plan.[4] Under this Court's Fifth Amended Administrative Order Prescribing Procedures for Chapter 13 Cases, the automatic stay has been terminated (in rem) as to Shellpoint because the Debtor has proposed paying Shellpoint direct outside the plan.[5]

And because the automatic stay has been terminated, the Debtor has lost the benefit of Rule 3002.1.[6] Rule 3002.1, among other things, requires the holder of a claim secured by the Debtor's principal residence to give the debtor notice of (1) any change to the debtor's monthly mortgage payment resulting from a change in the interest rate or escrow account; and (2) all fees, expenses, or charges the secured creditor has incurred postpetition that are recoverable against the debtor or his principal residence.[7] Rule 3002.1 also provides debtors a mechanism for challenging any of those fees, expenses or charges.[8]

---

[4] Doc. No. 14, ¶ 2; Doc. No. 5.

[5] Doc. No. 6, ¶4(h).

[6] Fed. R. Bankr. P. 3002.1.

[7] *Id.* 3002.1(a) – (b).

[8] *Id.* 3002.1 (e).

**II.     CONCLUSIONS OF LAW**

Wanting the benefit of Rule 3002.1's notice provisions and dispute-resolution mechanism, the Debtor has asked the Court to invoke the rule in this case.[9] According to the Debtor, Rule 3002.1 contemplates that this Court can reinstate the rule even though the automatic stay has been terminated. Indeed, the language in Rule 3002.1 providing that the rule ceases to apply once the automatic stay has been terminated is prefaced by the phrase, "unless the court orders otherwise."[10]

Thus, this Court has the authority to reinstate Rule 3002.1. Shellpoint, however, argues that it would be improper for the Court to do so here for three reasons.[11]

First, citing Committee Notes to a 2016 amendment to Rule 3002.1, which conditioned the applicability of Rule 3002.1 on the automatic stay being in effect, Shellpoint argues that the Court may only reinstate Rule 3002.1 after the stay has been terminated if the Debtor can prove he needs the information.[12] The Committee Notes that Shellpoint refers to give an example of when a debtor may need the information required under Rule 3002.1 even though stay relief has been granted:

> Debtors and trustees typically do not make payments on mortgages after the stay relief is granted, so there is generally no need for the holder of the claim to continue

---

[9] Doc. No. 14.

[10] Fed. R. Bankr. P. 3002.1(a).

[11] Doc. No. 17.

[12] *Id.* ¶¶ 8 – 11.

4

> providing the notices required by this rule. *Sometimes, however, there may be reasons for the debtor to continue receiving mortgage information after stay relief. For example, the debtor may intend to seek a mortgage modification or to cure the default. When the Court determines that the debtor has a need for the information required by this rule, the court is authorized to order that the notice obligations remain in effect or be reinstated after the relief from the stay is granted.*[13]

Second, Shellpoint argues that Rule 3002.1 was not intended to apply in situations where a debtor is current on his mortgage.[14] Again citing to the Committee Notes, Shellpoint points out that Rule 3002.1 was intended to help implement Bankruptcy Code § 1322(b)(5), which allows a debtor to cure an existing default and continue making payments over the life of a plan. According to Shellpoint, "[n]either the rule nor the advisory committee notes describe a situation where the loan is current at filing."[15]

Third, Shellpoint raises a practical concern: it says that if the Court reinstates Rule 3002.1, it will impose an undue burden on Shellpoint and other mortgage servicers.[16] For instance, Shellpoint explains that when the automatic stay is lifted, many of the computer systems that loan servicers use automatically remove the "bankruptcy hold" on the loan.[17] Although not stated, the implication is that once

---

[13] Rule 3002.1 advisory committee's notes to 2016 amendments. (emphasis added).

[14] Doc. No. 17 at ¶¶ 12 – 14.

[15] *Id.* at ¶ 13.

[16] *Id.* at ¶¶ 15 – 18.

[17] *Id.* at ¶ 16.

the "bankruptcy hold" is removed, loan servicers cannot send out the Rule 3002.1 notices without first recoding their systems.[18] Shellpoint says the cost for it (and other loan servicers) to recode their systems would be astronomical.[19]

Not to diminish the practical concerns that Shellpoint raises, which the Court appreciates, the decision to reinstate Rule 3002.1 turns on Shellpoint's first two arguments—i.e., that the Debtors do not have a need for the information required by Rule 3002.1 and that Rule 3002.1 was not intended to apply in cases where the debtor's mortgage is current as of the petition date. After all, if Rule 3002.1 was intended to apply in cases like this one and the Debtors have a need for the information required under Rule 3002.1, then Shellpoint's practical concerns cannot outweigh the Debtors' need for—and entitlement to—that information.

This Court concludes that Rule 3002.1 was, in fact, intended to apply in cases like this one. It is true, as Shellpoint points out, that the Committee Notes from 2011 explain that Rule 3002.1 was intended to help implement Bankruptcy Code § 1322(b)(5), which permits a debtor to cure arrearages through the plan.[20] But Shellpoint goes too far when it says "[n]either the rule nor the advisory committee notes describe a situation where the loan is current at filing."[21]

---

[18] *Id.*

[19] *Id.*

[20] Fed. R. Bankr. P. 3002.1 advisory committee's notes to 2011 enactment.

[21] Doc. No. 17 at ¶ 13.

To the contrary, the Committee Notes to the 2016 amendments say exactly that. But first some background.

When Rule 3002.1 was first adopted in 2011, it appeared to apply only when a debtor was curing mortgage arrearages through the plan:

> This rule applies in a chapter 13 case to claims that are (1) secured by a security interest in the debtor's principal resident, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan.[22]

That reading appeared to be confirmed by the Committee Notes, which explained that the rule was added to aid § 1322(b)(5)'s implementation.

But Rule 3002.1 was amended in 2016 to eliminate the reference to § 1322(b)(5). Why was the reference to § 1322(b)(5) deleted? According to the Committee Notes to the 2016 amendment, it was because the rule was intended to apply even if there was no prepetition arrearage to be cured:

> Subdivision (a) is amended to clarify the applicability of [Rule 3002.1]. Its provisions apply whenever a chapter 13 plan provides that contractual payments on the debtor's home mortgage will be maintained, whether they will be paid by the trustee or directly by the debtor. *The reference to § 1322(b)(5) of the Code is deleted to make clear that the rule applies even if there is no prepetition arrearage to be cured.* So long as a creditor has a claim that is secured by a security interest in the debtor's principal residence and the plan provides that contractual payments on the claim will be maintained, the rule applies.[23]

---

[22] Fed. R. Bankr. P. 3002.1 (2011).

[23] Fed. R. Bankr. P. 3002.1 advisory committee's notes to 2016 amendments (emphasis added).

Based on the Committee Notes, it is clear that Rule 3002.1 was intended to apply even if, as is the case here, the debtor is not in default on his mortgage.[24]

Indeed, the Committee Notes clarify that there are only two requirements for Rule 3002.1 to apply: (1) a creditor has a claim secured by a security interest in the debtor's principal residence; and (2) the plan provides that either the trustee *or the debtor* will make contractual payments.[25] Because both those requirements are satisfied here, Rule 3002.1 should apply.

The only reason Rule 3002.1 doesn't currently apply is because this Court's Administrative Order terminated the automatic stay as to Shellpoint. And under Rule 3002.1, the rule's notice requirements cease to apply when stay relief is granted. But the reasons for ceasing to apply the rule once stay relief is granted—i.e., debtors and trustees do not usually continue making payments after stay relief is granted—do not apply here. The Debtor here intends to continue paying Shellpoint—just outside the plan. According to the Committee Notes for Rule 3002.1, debtors making postpetition payments need to know if their mortgage payment has changed.[26]

---

[24] 9 Collier on Bankruptcy ¶ 3002.1.01 (16th ed. 2020) ("The Advisory Committee Note issued with the rule amendment states that the 'reference to § 1322(b)(5) of the Code is deleted to make clear that the rule applies even if there is no prepetition arrearage to be cured.'").

[25] Fed. R. Bankr. P. 3002.1(a); 9 Collier on Bankruptcy ¶ 3002.1.01 ("The rule as amended now explicitly states that it applies if the debtor's plan provides that the contractual installment payments will be made by "either the trustee or the debtor.").

[26] Fed. R. Bankr. P. 3002.1 advisory committee's notes to 2011 amendments.

### III.    CONCLUSION

Rule 3002.1 was "designed to prevent unexpected deficiencies in a mortgage when a case is completed and closed."[27] It does so by (1) requiring mortgage lenders to give debtors notice of changes to their mortgage payments and notice of certain fees, expenses, and charges; and (2) providing a mechanism for debtors to challenge those payments or fees, expenses, or charges. The Court understands that reinstating Rule 3002.1 imposes a burden (perhaps a significant one) on Shellpoint (and possibly other loan servicers), but when a "creditor's claim meets the requirements for application of Rule 3002.1, compliance with its provisions is mandatory, and a court does not have discretion to excuse compliance."[28]

Here, Shellpoint's claim meets the requirements of Rule 3002.1, and but for this Court's administrative order granting stay relief as a technical matter, Shellpoint would be subject to the rule's notice requirements. Because the Debtors intend to continue making their mortgage payments, they need notice of any changes to their payments or any fees, expenses, or charges Shellpoint may assess. It is therefore appropriate to reinstate Rule 3002.1 even though it imposes a burden on Shellpoint.

---

[27] 9 Collier on Bankruptcy ¶ 3002.1.01 (16th ed. 2020).

[28] *Id.* (citing *In re Adkins*, 477 B.R. 71, 73 (Bankr. N.D. Ohio 2012)).

Accordingly, it is

**ORDERED**:

1.　Debtors' motion to invoke Rule 3002.1 is GRANTED. Specifically, sections (a), (c), (e), and (i) of Rule 3002.1 apply in this case.

2.　Shellpoint Mortgage Servicing, or any future servicer who may acquire the servicing rights of Debtors' mortgage, shall file all applicable Notices of Fees, Expenses, and Charges required under Rule 3002.1(c). The Debtors have the right to move to determine the reasonableness of any fees, expenses, and charges under Rule 3002.1(e).

---

Attorney Donald Golden is directed to serve a copy of this Order and Memorandum Opinion on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Order and Memorandum Opinion.

---

**G. Donald Golden, Esq.**
**Katelyn M. Vinson, Esq.**
**Beth Ann Tobey, Esq.**
**The Golden Law Group**
　*Counsel for the Debtor*

**Seth Greenhill, Esq.**
**Padgett law Group.**
　*Counsel for NewRez, LLC, d/b/a Shellpoint Mortgage Servicing*